1999 Utah Ct. App. 315

### In the Matter of the ADOPTION OF A.B., D.B., and S.S., minors.

**L.S.C., Appellant,**

v.

**State of Utah, Appellee.**

**No. 981283–CA.**

Court of Appeals of Utah.

Oct. 28, 1999.

Kendall Peterson, Michael A. Stout, and Darwin H. Bingham, Peterson, Reed, LLC, Salt Lake City, for Appellant.

Jan Graham, Attorney General, John Peterson, and Carol L. Verdoia, Assistant Attorneys General, Salt Lake City, for Appellee Martha Pierce and Kristin L. Fadel, Salt Lake City, Guardians Ad Litem.

Before WILKINS, P.J., BENCH, and JACKSON, JJ.

## OPINION

WILKINS, Presiding Judge:

¶ 1 Appellant L.S.C., grandmother of A.B., D.B., and S.S., three minor children, appeals from the juvenile court's order entered on April 27, 1998(1) denying her petition for adoption; (2) denying her objection to the adoptive parents' petition for adoption; and, (3) denying her petition for grandparent visitation rights. We affirm.

## BACKGROUND

¶ 2 This case involves the adoption of three small children, A.B., D.B., and S.S. (the children), adopted by J.T. and V.T. (the adoptive parents).

¶ 3 The natural parents of the children have a long history of substance abuse. The deterioration in care provided by the natural parents coupled with the birth of the youngest child testing positive for cocaine, prompted the State of Utah, Division of Child and Family Services (DCFS), to file a verified petition for neglect seeking to temporarily remove the children from their natural parents. At the shelter hearing, the juvenile court found removal appropriate and awarded temporary custody and guardianship to DCFS with instructions to investigate appropriate kinship placement.

¶ 4 Thereafter, the court awarded temporary custody and guardianship of the two older girls to L.S.C., the children's maternal grandmother, and placed the newborn with the adoptive parents, who were paternal cousins of the children. Grandmother maintained guardianship and custody of the two older girls for one year. At a 12–month dispositional review hearing pursuant to Utah Code Ann. § 78–3a–312 and kinship review hearing pursuant to Utah Code Ann. § 78–3a–307(6), both held on September 18, 1997, the juvenile court ordered the youngest child to remain in the adoptive parents' custody and the older girls be removed from grandmother's custody and be placed in the temporary custody and guardianship of the adoptive parents. The juvenile court discontinued reunification services with the natural parents and awarded grandmother weekly visitation with the children.

¶ 5 The juvenile court terminated the parental rights of the natural parents in February 1998. That same month, grandmother filed a petition for grandparent visitation rights.

¶ 6 On March 20, 1998, the adoptive parents filed a petition to adopt all three children and mailed notice to grandmother. On March 25, 1998 the adoptive parents mailed an amended notice of hearing to grandmother, notifying her that the final adoption hearing on the petition was scheduled for April 9, 1998.

¶ 7 On the day of the hearing, grandmother filed an objection to the adoptive parents' petition for adoption and filed her own petition for adoption. Grandmother and her attorney were present and participated in the hearing. At the hearing, the court consolidated the proceedings pertaining to the adoption, addressing the adoptive parents' petition as well as grandmother's rights with regard to the children. In its findings of fact, conclusions of law and order dated April 27, 1998, the juvenile court denied grandmother's petition to adopt, denied grandmother's objection to the adoptive parents' petition, terminated any and all visitation rights between grandmother and the children,[1] and granted the adoptive parents' petition to adopt all three children. In denying grandmother's adoption petition, the court

---

1. Visitation between grandmother and the children is now at the discretion of the adoptive parents.

concluded that the hearing on the adoptive parents' petition on April 9th satisfied grandmother's right to a hearing on her adoption petition. Grandmother appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 8 Grandmother presents three issues for our consideration. First, we must determine whether the juvenile court erred in denying her petition for adoption. Second, we must decide whether the juvenile court erred in denying her objection to the adoptive parents' petition for adoption. Third, we review whether the juvenile court erred in denying grandmother's petition for grandparent visitation rights. These issues all involve interpretation of existing statutory and case law and thus are issues of law, which we review for correctness. *See In re H.J.*, 986 P.2d 115, 118–120 (Utah Ct.App.1999); *De-Land v. Uintah County*, 945 P.2d 172, 174 (Utah Ct.App.1997).

## ANALYSIS

### I. *Grandmother's Petition for Adoption*

¶ 9 Grandmother appeals the juvenile court's order denying her adoption petition. Relying on *Wilson v. Family Services*, 554 P.2d 227 (Utah 1976), she maintains that the juvenile court denied her a proper hearing and determination of her rights regarding the welfare and custody of the children. She contends that by proceeding without conducting a separate, full evidentiary hearing on her adoption petition, the court deprived her of "a legal right without due process of law." We disagree.

¶ 10 Utah's appellate courts have interpreted various provisions of Utah's adoption statute as entitling adoption petitioners a right to a full evidentiary hearing on their adoption petition. *See, e.g.*, *H.J.*, 986 P.2d at 126 (stating Utah Code Ann. § 78–30–14(5) (1996) [2] requires court to " 'conduct a full hearing on petition for adoption and examine the parties in interest under oath' ") (citations omitted); *In re Adoption of W.A.T.*, 808 P.2d 1083, 1086 (Utah 1991) (stating "Utah Code Ann. § 78–30–8,—9 requires a full-scale evidentiary hearing and evaluation hearing" on adoption petition).

¶ 11 Further, "[u]nder Utah law, persons with a special relationship to a child have a right to a hearing on adoption or custody matters." *H.J.*, 986 P.2d at 123; *see Wilson*, 554 P.2d at 230–31. In *H.J.* we stated:

[A]lthough only parents have a *vested* right in the custody of a child, under some circumstances the "next of kin, such as [a] grandmother, do have some dormant or inchoate right or interest in the custody and welfare of children who become parentless, so that they may come forward and assert their claim." *Wilson*, 554 P.2d at 231 (holding grandmother had right to hearing before adoption of grandchild when grandmother asserted interest promptly after parental rights terminated). This is a strong interest that should be seriously considered by the juvenile court, "*at least to the extent of according ... a hearing and determination on the merits*" *of an adoption petition. Id.*

*H.J.*, 986 P.2d at 123 (second emphasis added).

¶ 12 In *H.J.*, we held that the juvenile court erred in dismissing a grandmother's adoption petition without holding an evidentiary hearing on the merits of the petition. *See id.* at 127. There, we held that the grandmother had a "sufficient connection to her grandchildren to warrant the right to a hearing on her petition for adoption" due to her regular contact with the children prior to DCFS custody, her care of the children for extended periods, and because she promptly asserted her interest and offered to provide a stable home and support. *Id.* at 124. Similarly, in *Wilson*, the Utah Supreme Court held that "the matter of family relationship may be a factor which should be given due and serious consideration" in adoption and custody matters. *Wilson*, 554 P.2d at 230. There, the supreme court held that when a "grandmother came forward promptly to ex-

---

2. This section provides in pertinent part: "The court shall conduct a full hearing on the petition for adoption and examine the parties in interest under oath." Utah Code Ann. § 78–30–14(5) (1996).

press her love and concern for her grand-child and offered to provide him with a home and support," the court should have extended her a "hearing and determination on the merits of her [adoption/custody] petition." *Id.* at 231.

¶ 13 Had grandmother in this case been the only adoption petitioner, she certainly would have been entitled to an evidentiary hearing. Grandmother had a sufficient connection to her grandchildren to entitle her to a full hearing on her adoption petition: she was the children's grandparent, had temporary custody and guardianship of two of the children for one year, promptly asserted an interest in the welfare of the children, and had visitation rights for over a year. Moreover, the Utah adoption statute and case law interpreting it would normally warrant an evidentiary hearing on her petition. However, unlike *H.J., Wilson,* and *W.A.T,* where only one petition for adoption existed, here, two competing adoption petitions were filed: the first filed by the adoptive parents; the second by grandmother. In fact, grandmother filed her petition to adopt the children the same day the adoptive parents' adoption petition was scheduled for hearing. The trial court properly consolidated the petitions into one adoption proceeding.

¶ 14 Utah's adoption statute does not address the consolidation of adoption petitions, nor does it provide that a court may accord one adoption petition a procedural preference over another. However, Rule 42 of the Utah Rules of Civil Procedure applies in adoption proceedings. *See Thiele v. Anderson,* 975 P.2d 481, 484–85 (Utah Ct. App.1999) (indicating that because adoption statute does not contain a complete set of procedural guidelines to govern adoptions, rules of civil procedure have been implicitly accepted for use in Utah adoption cases). Rule 42(a) permits a court to order a joint hearing or consolidate proceedings when actions involve a common question of law or fact to avoid unnecessary delay. Some states allow a court to consolidate two adoption petitions into one proceeding and give procedural preference to the petition that is most compliant with the state's adoption statute. *See In re W.E.G.,* 710 P.2d 410, 412 (Alaska 1985) (indicating when two petitions for adoption filed, the court may consolidate proceedings); [3] *In re Greenwood,* 288 S.W.2d 413, 414 (Mo.Ct.App.1956) (noting court properly considered two adoption petitions as one action); 2 C.J.S. *Adoption of Persons* § 77(c) (1972) ("Where the petitions for the adoption of the same child[ren] are filed by two different parties in the same court, there is in effect one action, and the petitions are properly consolidated."). In a consolidated adoption proceeding, the court may determine that one petition is the primary matter to be decided and hear that petition first.[4] *See W.E.G.,* 710 P.2d at 412. If that petition is granted, the adoption placement is concluded and there is no need to consider the second petition. *See id.* This approach is both reasonable and fair.

¶ 15 Here, the adoptive parents were the first to file a petition for adoption and to obtain a hearing date. They had properly served notice of their petition on those legally entitled to notice. Grandmother also filed, but had neither served notice as required by law nor obtained a hearing date. The peti-

---

**3.** In *W.E.G.,* two adoption petitions were filed: one by the grandparents, another by foster parents. *See* 710 P.2d at 411–12. It is unclear which petition was filed first. The foster parents' adoption petition was scheduled to be heard first, however, "the grandparents obtained a temporary restraining order staying that proceeding." *Id.* at 412. The court then consolidated the proceedings pertaining to the adoption. *See id.* At a pretrial conference on the consolidated cases, the trial court ruled that because the foster parents' adoption petition met the procedural formalities, while the grandparents' petition was deficient in that it lacked the biological parents' consent, the foster parents' petition would be heard first. *See id.* at 412, 416 & n. 13. "The court further ruled that if the foster parents' adoption petition were granted, the matter of the adoption placement would be concluded." *Id.* at 412 (stating only if foster parents' adoption is not granted would court consider grandparents' adoption petition). The appellate court agreed in this respect and further ruled that the grandparents were not entitled to priority in being heard merely because they were natural relatives. *See id.* at 412–13.

**4.** An examination of the comparative merits of the competing petition for adoption could fall appropriately within such a proceeding, if warranted.

tion filed by the adoptive parents was more compliant with Utah's adoption statute and was properly the first petition to be considered at the adoption hearing. Because the adoptive parents' petition was the only one scheduled to be heard, there was a possibility that the adoption placement would be concluded if the petition were granted, which is indeed what happened. *See id.* (indicating that when two petitions for adoption filed and court hears first petition and grants adoption, the adoption placement is concluded). Although the court also briefly addressed grandmother's petition to adopt, the court was under no further legal obligation to do so once it had granted the adoptive parents' petition, which was dispositive of the adoption. In effect, because the court granted one petition to adopt, the adoption placement was concluded and the children became unavailable for adoption absent the relinquishment or termination of the parental rights of the adoptive parents.

¶ 16 Grandmother's claim that her relationship as next-of-kin entitles her to a preference over the adoptive parents is unavailing. Essentially, she argues that her claim to the children is superior than that of the adoptive parents and therefore her adoption petition should have been given first priority. However, Utah law does not give such a preference in adoption cases. *See* Utah Code Ann. § 78–30–1.5 (1996) ("It is the intent and desire of the Legislature that in every adoption the best interest of the child should govern and be of foremost concern in the court's determination."). In this case, the adoptive parents also had a kinship relation to the children, as paternal cousins.

However, no priority between these competing petitions is created by the varying degrees of kinship. As such, we find no error in the trial court's handling of the competing adoption petitions.

## II. *Grandmother's Objection to J.T. and V.T.'s Petition for Adoption*

¶ 17 Next, grandmother contends that the juvenile court erred by denying her objection to the adoptive parents' petition for adoption without allowing her a full opportunity to present evidence on her objection. Specifically, she argues that by giving her only fourteen days notice of the final adoption hearing, rather than a full thirty days notice, as mandated by Utah Code Ann. § 78–30–4.13(5), she was denied her right to due process. We disagree.

¶ 18 Utah's adoption statute entitles only certain persons to thirty day notice of adoption proceedings. *See* Utah Code Ann. § 78–30–4.13 (Supp.1999).[5]

¶ 19 Grandmother argues that she is a party objecting to an adoption petition and must be accorded an evidentiary-type hearing as required by Utah Code Ann. § 78–30–4.13(11). However, her reliance on section 78–30–4.13 as entitling her to thirty day notice of the adoption proceeding is misplaced. As she conceded before the juvenile court, she does not fall within the class of persons who are entitled to receive notice under the statute. Furthermore, her objection raised only two issues: her competing petition for adoption, and her petition for grandparent visitation rights. Both were addressed by the juvenile court, and both were denied on

---

5. This section provides in relevant part:

Notice of adoption proceedings.

(2) Notice of an adoption proceeding shall be served on each of the following persons:

(a) any person or agency whose consent or relinquishment is required under Section 78–30–4.14 unless that right has been terminated by waiver, relinquishment, consent, or judicial action;

(b) any person who has initiated a paternity proceeding and filed notice of that action with the state registrar of vital statistics within the Department of Health, in accordance with Subsection (3);

(c) any legally appointed custodian or guardian of the adoptee;

(d) the petitioner's spouse, if any, only if he has not joined in the petition;

(e) the adoptee's spouse, if any;

(f) any person who is recorded on the birth certificate as the child's father, with the knowledge and consent of the mother;

(g) any person who is openly living in the same household with the child at the time the consent is executed or relinquishment made, and who is holding himself out to be the child's father; and

(h) any person who is married to the child's mother at the time she executes her consent to the adoption or relinquishes the child for adoption.

Utah Code Ann. § 78–30–4.13(2) (1996).

legal grounds grandmother could not have overcome by any proffered evidence. Although addressed only briefly, the juvenile court adequately considered grandmother's objection to the adoptive parents' petition for adoption, and found them legally insufficient. No more was required.

### III. *Grandparent Visitation Rights*

¶ 20 We next consider whether the juvenile court erred in denying grandmother's petition for grandparent visitation rights.[6] Grandmother argues that none of the factors relied upon by the juvenile court in refusing to grant her further visitation rights required either the termination of her visitation rights or the denial of post-adoptive visitation rights. The record reveals, however, that the juvenile court relied solely upon the termination of the parental rights of the biological parents. The court specifically considered *Kasper v. Nordfelt*, 815 P.2d 747 (Utah Ct.App.1991) and Utah Code Ann. § 30–5–2 (1995),[7] in concluding that the termination of the natural parents' parental rights terminated grandmother's rights to exercise grandparent visitation.

¶ 21 Section 30–5–2 (1995) only applies where the grandparent's child (the grandchild's parent) has died, divorced, or legally separated from his or her spouse. Because these circumstances are absent in this case, grandmother cannot rely upon the statute to bring a petition for grandparent visitation. *See Campbell v. Campbell*, 896 P.2d 635, 640 n. 9 (Utah Ct.App.1995); *see also* Stephen E. Averett, *Grandparent Visitation Right Statutes*, 13 B.Y.U. J. Pub.L. 355, 355–56 (1999) (discussing Utah's grandparent visitation rights statute). Moreover, we interpreted a similar version of this statute in *Kasper*, holding that " 'statutory visitation rights do not apply in adoption proceedings after the termination of the natural parents' rights.' " *Kasper*, 815 P.2d at 750 (citation omitted). Grandmother's visitation rights were extinguished by operation of law when the court terminated her child's parental rights. The fact that grandmother filed her petition for visitation before the court entered its termination of parental rights order makes no difference.

### CONCLUSION

¶ 22 We conclude that the juvenile court did not err in denying grandmother's petition for adoption. The court properly consolidated the parties' petitions into one joint proceeding and properly granted procedural preference to the adoptive parents' petition. Further, the court properly denied both grandmother's objection to the adoptive parents' adoption petition and her petition for grandparent visitation rights.[8]

¶ 23 Affirmed.

¶ 24 WE CONCUR: RUSSELL W. BENCH, Judge, NORMAN H. JACKSON, Judge.

---

6. We are mindful that the United States Supreme Court recently granted certiorari in the case of *Troxel v. Granville*, 971 P.2d 56 (Wash.Ct.App. 1998), *cert. granted*, —— U.S. ——, 120 S.Ct. 11, 144 L.Ed.2d 842 (1999). That case concerns the conflict between grandparents' rights to visit grandchildren and the right of parents who object to such visitation. However, the case arises in the context of divorce and does not address circumstances of parental rights termination, as here.

7. Utah Code Ann. § 30–5–2 (1995), the law applicable to grandmother's petition for visitation provides:

   (1) The district court may grant grandparents reasonable rights of visitation, if it is in the best interest of the grandchildren, in cases where a grandparent's child has died or has become a noncustodial parent through divorce or legal separation.

   (2) Grandparents may petition the court as provided in Section 78–32–12.2 to remedy a parent's wrongful noncompliance with a visitation order.

   Section 30–5–2, U.C.A., was amended in 1998, and now provides that the "[V]oluntary or involuntary termination of parental rights ... terminates all rights of a biological grandparent to petition for visitation under this section." Utah Code Ann. § 30–5–2(3) (1998). This later amendment does not apply in this case.

8. The Guardian ad Litem's motion to rule on this matter without the benefit of appellant's reply brief is denied.