Justice Stevens,
concurring.
This is an odd flyspeck of a case. The charges that have been pending against respondents for the past six years are minor offenses — intoxication, contributing to the delinquency of a minor, and disorderly conduct — two of which could have been proved by evidence that was gathered by the responding officers before they entered the home. The maximum punishment for these crimes ranges between 90 days and 6 months in jail. And the Court’s unanimous opinion restating well-settled rules of federal law is so clearly persuasive that it is hard to imagine the outcome was ever in doubt.
Under these circumstances, the only difficult question is which of the following is the most peculiar: (1) that the Utah trial judge, the intermediate state appellate court, and the Utah Supreme Court all found a Fourth Amendment violation on these facts; (2) that the prosecution chose to pursue this matter all the way to the United States Supreme Court; or (3) that this Court voted to grant the petition for a writ of certiorari.
A possible explanation for the first is that the suppression ruling was correct as a matter of Utah law, and neither trial counsel nor the trial judge bothered to identify the Utah Constitution as an independent basis for the decision because *408 they did not expect the prosecution to appeal.* The most plausible explanation for the latter two decisions is that they were made so police officers in Utah may enter a home without a warrant when they see ongoing violence — we are, of course, reversing the Utah Supreme Court’s conclusion to the contrary. But that purpose, laudable though it may be, cannot be achieved in this case. Our holding today addresses only the limitations placed by the Federal Constitution on the search at issue; we have no authority to decide whether the police in this case violated the Utah Constitution.
The Utah Supreme Court, however, has made clear that the Utah Constitution provides greater protection to the privacy of the home than does the Fourth Amendment. See State v. DeBooy, 2000 UT 32, ¶ 12, 996 P. 2d 546, 549. And it complained in this case of respondents’ failure to raise or adequately brief a state constitutional challenge, thus preventing the state courts from deciding the case on anything other than Fourth Amendment grounds. See 2005 UT 13, ¶ 12, 122 P. 3d 506, 510. “[S]urpris[ed]” by “[t]he reluctance of litigants to take up and develop a state constitutional analysis,” ibid., the court expressly invited future litigants to bring challenges under the Utah Constitution to enable it to fulfill its “responsibility as guardians of the individual liberty of our citizens” and “undertak[e] a principled exploration of the interplay between federal and state protections of individual rights,” id., at 511. The fact that this admonishment and request came from the Utah Supreme Court in this very case not only demonstrates that the prosecution selected the wrong case for establishing the rule it wants, but also indicates that the Utah Supreme Court would probably adopt the same rule as a matter of state constitutional law that we reject today under the Federal Constitution.
*409 Whether or not that forecast is accurate, I can see no reason for this Court to cause the Utah courts to redecide the question as a matter of state law. Federal interests are not offended when a single State elects to provide greater protection for its citizens than the Federal Constitution requires. Indeed, I continue to believe “that a policy of judicial restraint — one that allows other decisional bodies to have the last word in legal interpretation until it is truly necessary for this Court to intervene — enables this Court to make its most effective contribution to our federal system of government.” Michigan v. Long, 463 U. S. 1032, 1067 (1983) (Stevens, J., dissenting). Thus, while I join the Court’s opinion, I remain persuaded that my vote to deny the State’s petition for certiorari was correct.

Indeed, it was the prosecution that prepared the trial court’s order granting respondents’ motion to suppress. See 2002 UT App. 317, ¶ 4, 57 P. 3d 1111, 1112.